IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHANTOVIA JACKSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:22-cv-1687-N-BN |
| | § | |
| CHICK AND SEAFOOD INC., ET AL., | § | |
| | § | |
| Defendants. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

In this employment action, raising claims under Title VII, 42 U.S.C. § 1981, and the Fair Labor Standards Act ("FLSA"), the Court granted counsel's motions for leave to withdraw as attorney of record for Defendants Chick and Seafood Inc. ("CSI"), Grand HBL, LLC, and Linda Henderson. *See* Dkt. Nos. 32-35.

Chief United States District Judge David C. Godbey then referred this lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b). *See* Dkt. No. 36.

Plaintiff Chantovia Jackson has moved for default judgments against CSI, Grand HBL, Henderson, and Defendant Amjad Elatrash. *See* Dkt. Nos. 41, 42, 48, 49, 51, & 52. And the undersigned enters these findings of fact, conclusions of law, and recommendation that, for the reasons and to the extent set out below, the Court should grant the motions.

### Applicable Background

Prior to referring this case to the undersigned, the Court granted Jackson leave

to file a Second Amended Complaint (the "SAC"). *See* Dkt. No. 30. And the SAC, adding Elatrash as a new defendant, was filed on June 29, 2023. *See* Dkt. No. 31.

As to CSI and Grand HBL's failure to retain new counsel and direct counsel to enter an appearance on the record, *see* Dkt. No. 37, the undersigned entered findings of fact and conclusions of law recommending that the Court order that CSI's answer [Dkt. No. 8] and Grand HBL's answer [Dkt. No. 28] be stricken; order that both CSI and Grand HBL are in default; direct that the Clerk of Court enter default against CSI and Grand HBL under Federal Rule of Civil Procedure 55(a); and order that Jackson move (by no later than a date 30 days from the date of entry of any order accepting or adopting the recommendations) for default judgment against CSI and Grand HBL for their failure to appear by and through counsel [Dkt. No. 38] (the "FCR").

The Court accepted the FCR, *see* Dkt. No. 46, the Clerk entered defaults accordingly, *see* Dkt. No. 47, and Jackson moved for default judgment as to CSI and Grand HBL, *see* Dkt. Nos. 48 & 49.

The FCR did not apply to the individual defendants, who were able to respond to the SAC *pro se*, if necessary.

But, because neither individual defendant had responded to the SAC, the Court also entered an order requiring that Jackson "either (1) file a status report advising the Court if Jackson does not believe that either individual defendant (or both) is in default after having been properly served with process in this case or (2) seek entry of default and file a motion for default judgment against either individual

defendant – or both." Dkt. No. 39; *see also* N.D. TEX. L. CIV. R. 55.1 ("If a defendant has been in default for 90 days, the presiding judge may require the plaintiff to move for entry of a default and a default judgment. If the plaintiff fails to do so within the prescribed time, the presiding judge will dismiss the action, without prejudice, as to that defendant.").

And Jackson moved for entry of default and default judgment as to Henderson and Elatrash, *see* Dkt. Nos. 51 & 52, and the Clerk entered defaults accordingly, *see* Dkt. No. 53.

**Legal Standards**

When a defendant has "failed to plead or otherwise defend" an action, the Court may enter a default judgment if the plaintiff establishes the following prerequisites: (1) the defendant was served with the summons and complaint and default was entered; (2) the defendant is not "a minor or incompetent person"; and (3) the defendant is not in the military. FED R. CIV. P. 55(b)(2); *see also* 50 U.S.C. § 3931(a), (b) (providing "[p]rotection [for] servicemembers against default judgments").

In this circuit, there is a required three-step procedure to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk of the Court; and (3) entry of default judgment by the district court. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) (defining "the terms regarding defaults").

Even though the United States Court of Appeals for the Fifth Circuit favors resolving cases on their merits rather than granting default judgments, this preference is "counterbalanced by considerations of social goals, justice, and

expediency, a weighing process [that] lies largely within the domain of the trial court's discretion." *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999).

In consideration of these competing preferences, the Court takes a two-part approach in determining whether to grant entry of default judgment. *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (requiring a "sufficient basis in the pleadings for the judgment entered"); *see also Lindsey v. Price Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (stating "relevant factors" in determining whether default judgment is appropriate).

First, the Court considers the following six non-exhaustive factors to decide whether default judgment is appropriate: (1) "whether the default was caused by a good faith mistake or excusable neglect"; (2) "whether there has been substantial prejudice"; (3) "the harshness of a default judgment"; (4) whether there are "material issues of fact"; (5) "whether the grounds for a default judgment are clearly established"; and (6) whether the Court would be "obliged to set aside the default on the defendant's motion." *Lindsey*, 161 F.3d at 893. Default judgment can also appropriate where a defendant fails to follow court orders. *See McGrady v. D'Andrea Elec., Inc.*, 434 F.2d 1000, 1001 (5th Cir. 1970) (upholding a default judgment due to a defendant's "delay and failure to comply with court rules").

Second, the Court must assess the merits of the plaintiff's claims and find a "sufficient basis in the pleadings for the judgment entered." *Nishimatsu*, 515 F.2d at 1206; *see also Escalante v. Lidge*, 34 F.4th 486, 493 (5th Cir. 2022) ("[E]ven if a

defendant defaults, a court may still deny default judgment if the plaintiff has failed to state a claim on which relief can be granted." (citing *Lewis v. Lynn*, 236 F.3d 766, 767-68 (5th Cir. 2001) (per curiam))).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must "contain a short and plain statement of the claim showing the pleader is entitled to relief." FED R. CIV. P. 8(a)(2). This requirement "give[s] the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). By defaulting, the defendant is deemed to admit "the plaintiff's well-pleaded allegations of fact" and is not deemed to "admit allegations that are not well-pleaded or to admit conclusions of law." *Nishimatsu*, 515 F.2d at 1206. The factual allegations, assumed to be true, need only "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Detailed allegations are not required, but "the pleading must present more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"A default judgment … establishes the defendant's liability. But it does not establish the amount of damages." *United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). "[I]n the context of a default judgment, unliquidated damages normally are not awarded without an evidentiary hearing … [except] where the amount claimed is a liquidated sum or one capable of mathematical calculation." *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

A sum capable of mathematical calculation is one that can be "computed with certainty by reference to the pleadings and supporting documents alone." *Id.* at 311.

Thus, affidavits submitted to support a claim for mathematically calculable damages "must be sufficiently detailed to establish necessary facts." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

Two other caveats apply. "[A] 'party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default.' In fact, '[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations.'" *Lewis*, 236 F.3d at 767 (citations omitted). And, before it may enter default judgment, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (quoting *Williams v. Life Savings & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999) (federal courts have independent duty to examine their own subject matter jurisdiction).

## Analysis

### I. The Court has jurisdiction over the subject matter and the parties.

Deciding the motion for default judgment "begins, as it must, by examining the Court's jurisdiction." *Wattiker v. Elsenbary Enters., Inc.*, No. 3:22-cv-940-B-BN, 2023 WL 5167023, at *3 (N.D. Tex. May 19, 2023) (cleaned up; quoting *Hammerschmidt v. Garland*, 54 F.4th 282, 287 (5th Cir. 2022)), *rec. accepted*, 2023 WL 5167019 (N.D. Tex. June 13, 2023); *accord Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024) ("Jurisdiction is always first." (citation omitted)).

Through the SAC, Jackson alleges more than insubstantial violations of Section 1981, Title VII, and the FLSA and has therefore alleged that the Court

possesses subject matter jurisdiction under 28 U.S.C. § 1331.

The same allegations reflect that the defendants own or operate the business in the Dallas area where the alleged violations of federal law occurred. *See, e.g.*, Dkt. No. 31, ¶¶13 & 20-24 ("CSI operates a fast-food franchise outlet of Henderson Chicken on Camp Wisdom Road in Dallas, Texas. The Camp Wisdom Henderson Chicken location is one of approximately fifteen Henderson Chicken franchises throughout the Dallas area. Grand HBL is the franchisor of Henderson Chicken, and Ms. Henderson is the managing member of Grand HBL." While Mr. Elatrash is also a "purported owner" of the Camp Wisdom Store and made derogatory comments to Jackson and terminated her employment.).

Jackson has therefore alleged that the Court possesses jurisdiction over the defendants.

## II.     The procedural requirements for default judgment have been met.

Starting with service of the operative complaint (the SAC), Jackson was not required to personally serve the SAC on CSI, Grand HBL, and Henderson, as "personal service of the summons and complaint is not required in order to serve an amended complaint on parties who have already appeared in the litigation." *Taylor v. El Centro Coll.*, No. 3:21-cv-999-D-BH, 2022 WL 581812, at *1 (N.D. Tex. Feb. 25, 2022) (citing *Fluor Eng'rs & Constructors, Inc. v. S. Pac. Transp. Co.*, 753 F.2d 444, 449 n.7 (5th Cir. 1985) (Federal Rule of Civil Procedure 5 "facilitate[s] the pleadings process by permitting service on attorneys of record rather than the individual litigants once the parties are before the court."); collected cases omitted), *aff'd*, 2022 WL 837210 (N.D. Tex. Mar. 21, 2022).

And Jackson filed a process server's affidavit reflecting that he personally served the SAC on Elatrash on December 5, 2023. *See* Dkt. No. 52 at 3.

The Clerk has entered defaults as to all the defendants. *See* Dkt. Nos. 47 & 53.

Neither CSI nor Grand HBL is a natural person, so neither defendant can be a minor, an incompetent person, or in the military service.

And Jackson submitted evidence that neither Henderson nor Elatrash is in the military service. *See* Dkt. No. 52 at 11-16. Nor does the record reflect that either is a minor or an incompetent person.

### III. Jackson's allegations support default judgment as to the claims asserted.

Jackson, who "is an African-American female," alleges retaliation under Section 1981 against all the defendants based on (1) that she complained to Elatrash and Henderson "about racially offensive language and disparate treatment and received no response" – Elatrash "frequently stated his belief that African-Americans are lazy and not hard workers," and he "and the store manager, who used the name 'Jordan,' regularly referred to African-American employees as 'you people' and 'you motherfuckers'"; this coincided with "African-American employees frequently [being] denied breaks, while non-African-American employees essentially were free to come and go as they pleased" – and (2) that, after Jackson complained, she was terminated, "expressly because of her complaints of employment discrimination." Dkt. No. 31, ¶¶ 2, 20 & 28-29.

Section 1981 "guarantees to '[a]ll persons within the jurisdiction of the United States ... the same right ... to make and enforce contracts ... as is enjoyed by white

citizens.'" *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399 (5th Cir. 2021) (quoting 42 U.S.C. § 1981(a)). "It defines the phrase 'make and enforce contracts' to include 'the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" *Id.* (quoting 42 U.S.C. § 1981(b)). And, "[w]hile the statute's text does not expressly discuss causation, it is suggestive," such that, "[t]o prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 333 (2020); *see also Williams v. Waste Mgmt., Inc.*, 818 F. App'x 315, 325 (5th Cir. 2020) (per curiam) ("Although similar in some respects to Title VII, 42 U.S.C. § 1981 requires plaintiff's showing but-for causation." (citation omitted)).

As set out above, Jackson has alleged facts to support the essential elements of a Section 1981 retaliation claim – "that: 1) she engaged in a protected activity; 2) she suffered an adverse employment action; and 3) there is a causal connection between the two." *Owens v. Circassia Pharm., Inc.*, 33 F.4th 814, 835 (5th Cir. 2022) (citation omitted). And she has pled that race was the but-for cause of her injury.

So Jackson's allegations support default judgment as to the Section 1981 retaliation claim.

She next asserts claims under Title VII, for discrimination and retaliation, against CSI and Grand HBL, her alleged employers under Title VII. *See* Dkt. No. 31, ¶ 12.

Jackson's Title VII claims are based on (1) the allegations as to race that

support the Section 1981 claims (as set out above) and (2) allegations of sexual harassment by Elatrash and Jordan. *See id.*, ¶¶ 21-25, 34-38, & 43-45.

And the facts alleged support the essential elements of the Title VII claims such that the Court should also find that there is support for default judgment as to these claims. *See Owens*, 33 F.4th at 835 (same elements as to a Title VII retaliation claim); *Thomas v. Dall. Indep. Sch. Dist.*, No. 23-10882, 2024 WL 2874367, at *4 (5th Cir. June 7, 2024) ("[A]t the motion to dismiss stage a plaintiff must plead two ultimate elements in order to support a disparate treatment claim: (1) an adverse employment action, (2) taken against a plaintiff because of her protected status. In fact, a court inappropriately heightens the pleading standard by subjecting a plaintiff's allegations to a rigorous factual or evidentiary analysis under the *McDonnell Douglas* framework in response to a motion to dismiss." (cleaned up; quoting *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019))); *see also Landry v. Leesville Rehab. Hosp., L.L.C.*, No. 2:19-CV-00465, 2021 WL 2604835, at *2 (W.D. La. June 24, 2021) ("Sexual harassment is a form of illegal employment discrimination," which "under Title VII generally falls into two categories," one of which is "that a supervisor's sexual harassment created a 'hostile work environment.'" (citing *Casiano v. AT&T Corp.*, 213 F.3d 278, 283-84 (5th Cir. 2000))), *aff'd*, 2022 WL 358168 (5th Cir. Feb. 7, 2022).

Jackson also alleges facts to support default judgment as to the claimed FLSA violation. *See* Dkt. No. 31, ¶ 17 ("During her entire tenure at Henderson Chicken, Plaintiff's wages were paid in cash at the end of each shift. None of the locations

provided Plaintiff with an IRS Form W-2, 1099, or other tax document. While Plaintiff regularly worked as many of sixty hours per week, none of the franchises paid overtime wages as required by the Fair Labor Standards Act.").

## IV.  Consideration of other factors supports default judgment.

Default judgment is a harsh remedy, but, as set out above, the record supports default judgment.

There has not been substantial prejudice against the defendants.

And there are clearly established grounds for default, as set out above.

There is no indication that the defaults were caused by good faith mistake or excusable neglect.

And, so, the court would not necessarily feel obligated to set aside a default (should a motion to do so be filed). *See Lindsey*, 161 F.3d at 893.

## V.  As requested, the Court should conduct a hearing as to damages.

Jackson requests a hearing to determine compensatory and punitive damages plus costs and interest. *See, e.g.*, Dkt. No. 51 at 3. The undersigned agrees that this would be prudent. Accordingly, if the Court accepts or adopts these findings, conclusions, and recommendation and grants the default judgments, the undersigned can enter further orders and conduct proceedings to determine the amount of damages to be awarded and make a recommendation to the Court.

## Recommendation

The Court should grant the motions for default judgment [Dkt. Nos. 41, 48, & 51]; enter default judgments against Defendants Chick and Seafood Inc., Grand HBL, LLC, Linda Henderson, and Amjad Elatrash; and defer a determination as the

damages to be awarded.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 12, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE